**BRIAN C. LOWNEY**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**101 E. Front St., Suite 401**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: brian.lowney@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 25-47-M-DWM** |
| **Plaintiff,** | |
| **vs.** | **SENTENCING MEMORANDUM** |
| **MATTHEW RAY TACK,** | |
| **Defendant.** | |

The United States, represented by Assistant U.S. Attorney Brian C. Lowney, files the following in anticipation of the sentencing hearing set in this case on April 24, 2026.  Doc. 30.

### INTRODUCTION

On October 22, 2025, a Montana grand jury handed down a seven-count indictment against Matthew Ray Tack, each charging a separate sexual offense.

1

PSR ¶ 1.  Counts 1 and 4 charged production of child pornography, in violation of 18 U.S.C. §§ 2251(a) & (e).  PSR ¶¶ 1-2.  Counts 2 and 5 charged transfer of obscene material to minors, in violation of 18 U.S.C. § 1470.  *Id.*  Counts 3 and 6 charged penalties for registered sex offenders, in violation of 18 U.S.C. § 2260A.  *Id.*  Count 7 charged receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  *Id.*

On December 17, 2025, Tack pled guilty to counts 1, 2, 4, 5, and 7 of the indictment, pursuant to a plea agreement.  PSR ¶¶ 6-7.  Thereafter, the United States Probation Office prepared a Presentence Investigation Report (PSR), which calculated Tack's advisory guidelines range at 360 months to 1920 months, based on a total offense level (TOL) of 41 and a criminal history category (CHC) of IV.[1] PSR ¶ 137.

Per statute, the minimum term of imprisonment on counts 1 and 4 is 25 years and the maximum term of imprisonment is 50 years.  PSR ¶ 136.  Per statute, the maximum term of imprisonment on counts 2 and 5 is 10 years.  *Id.*  Per statute, the minimum term of imprisonment on count 7 is 15 years and the maximum term of imprisonment is 40 years.  *Id*.

---

[1] While Tack's TOL and CHC place his guidelines range at 360 months to life, because the statutorily authorized maximum sentences are less than the high-end guidelines range, the upper bound is augmented to the statutory maximum of 1920 months (160 years).  PSR ¶ 137; USSG §5G1.2(b).

Counts 1, 4, and 7 require imposition of a term of supervised release of not less than five years to life.  PSR ¶ 140.  Counts 2 and 5 carry a term of supervised release of up to three years.  *Id*.

Additionally, there are special assessments associated with counts 1 and 4 ($50,000) and count 7 ($35,000) under 18 U.S.C. § 2259A, as well as a $5,000 special assessment per counts 1, 4, and 7, under 18 U.S.C. § 3013.  PSR ¶¶ 147-148.

Neither party has objections to the PSR.  The government does not intend to call any witnesses at sentencing.

## OFFENSE CONDUCT

In September 2013, when Tack was 29 years old, his friend reported to police that she had located sexually explicit pictures of minors on a computer Tack had loaned her.  PSR ¶ 94.  Further investigation revealed that Tack solicited these pictures from a 13-year-old child during online interactions with her.  *Id.*  The victim reported she believed herself to be in online relationship with Tack and sent him sexually explicit images of herself at his request.  *Id*.  When interviewed by law enforcement, Tack claimed that he believed the child to be 18 years old, but the child indicated she informed Tack she was 13 and noted her Facebook page listed her age as 13.

Analysis of Tack's electronics demonstrated that he had solicited sexually explicit images from multiple other minors in a similar fashion.  *Id*.  Additionally,

Tack's internet search history included the following terms: "free underage sex", "underage sex free", and "free underage sex lolitas". *Id*. Tack was on felony probation at the time of this offense. PSR ¶ 93.

For his behavior, Tack was charged with and convicted of sexual abuse of children, in violation of Mont. Code Ann. § 45-5-625, in Missoula County District Court Case DC-13-595. PSR ¶ 94. Tack was sentenced to 10 years to the Montana Department of Corrections, with five of those years suspended. *Id*. Tack was incarcerated until his release from custody in November 2018, at which point he was placed back on state supervision. PSR ¶ 13. Tack was required to register as a sexual offender and mandated to engage in sexual offender treatment. PSR ¶¶ 13; 111-113.

Though he participated in sexual offender treatment for years, Tack did not successfully complete the program, ultimately leaving treatment after he discharged his sentence in 2023. PSR ¶ 112. Tack's treatment provider noted that Tack "struggles with a propensity towards teenage girls" which he "has difficulty accepting", leading to "dishonest[y]… defensiveness and distortion." PSR ¶¶ 112-113.

Such characterization proved unfortunately prescient. Even while Tack was engaged in sex offender treatment, and even while he was on supervision for his prior sexual offense, Tack quickly returned to almost identical behavior. At least

4

since early 2021, Tack again began soliciting minors as young as 13 years old to send him sexually explicit images of themselves.  PSR ¶ 28.  Over the course of the next several years Tack groomed these children to do so, including Jane Doe 1 and Jane Doe 2.  Tack employed several different tactics to accomplish his goals.  For instance, though he was between 36 and 37 years old during these conversations, Tack represented himself as much younger to some of the children he was talking to, with the goal of forming a closer connection to them.  PSR ¶ 26.  Tack repeatedly told these children that they were beautiful, sent pictures of himself nude and in a state of sexual arousal to encourage the children to do the same, persistently turned the topic of their conversations to sexual matters, and assured the children that the images they sent him would remain private.

Tack understood what he was doing was illegal, but that did not deter him.  For instance, Tack told Jane Doe 2 that he would keep secret the images he had her produce, because of how "bad" the age difference between them was and that "we should not be doing this but we are… I could go to prison."  PSR ¶ 29.  Despite acknowledging the flagrantly illegal nature of his actions, Tack continued thereafter to contact Jane Doe 2 and other minors to produce similar material.  Jane Doe 2 eventually became so distressed with Tack's contact that she attempted suicide due to the images Tack persuaded her to send, saying to Tack "do you know how many times ive cut myself because of the things we did", and that

"failing at suicide" by cutting her wrists made her feel "so bad". Jane Doe 2 told Tack that she planned to kill herself once she reached high school, at which point Tack merely cut off conversation.

But even this interaction did not stop Tack from seeking out minors to satisfy his sexual desires. In May 2023, again while Tack was still on sex offender supervision, Tack began engaging with several law enforcement officers (online covert employees, or OCEs) posing as children online. These OCEs represented themselves as between 12 and 14 years of age, but that did not stop Tack from telling these children that he "honestly wan[ted] to fuck" them and from counseling them that sex hurts at first "[t]ill you get use (sic) to it, then it feels amazing." PSR ¶ 17. Tack persisted in several of these conversations for almost a year, during which time he left the country to travel to Colombia, eschewing his sex offender registration requirements to notify his registration agency in the process. PSR ¶¶ 21; 95. Though Tack told this Court in his allocation for that crime (see CR 24-60-M-DWM, Doc. 28) that he traveled to Colombia only for vacation, the search warrant executed at his home in May 2024 casts doubt on Tack's explanations. In Tack's home, investigators discovered notebooks that were full of names of teenage girls who appeared to play for high school and college sports teams around Montana, which included notes about their grade in school and their height. Additionally, Tack had sets of clothed photos of 12 to 13-

year-old girls with names and notes written on the backsides of the photos.  Lastly, Tack had books with titles like "Living Abroad in South Korea", including books about Colombia.

## RECOMMENDATION

### a. Legal Principles

Section 3553(a) of Title 18 of the United States Code contains prefatory language: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;

- promote respect for the law;

- provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and,

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; subsection (3) requires the Court to consider the kinds of sentences available; subsections (4), (5), and (6) require the Court to consider the sentencing

guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims.

### b. Restitution

The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), Public Law 115-299, enacted on December 7, 2018, created new penalties and made several changes to existing child pornography laws, specifically with regard to restitution. As it relates to the issue at bar, the AVAA provides that any defendant convicted of "trafficking in child pornography" must pay a minimum of $3,000 in restitution per victim for each count of conviction. Tack's convictions for count, 1, 4, and 7 are child pornography trafficking offenses for purposes of this provision. 18 U.S.C. § 2259(c)(3). The amount of restitution ordered is not dependent on a defendant's ability to pay. 18 U.S.C. § 2259(b)(4)(B). Instead, it is based upon a court's determination of the "full amount" of losses incurred by a victim as a result of the trafficking in child pornography depicting the victim. 18 U.S.C. § 2259(b)(2).

The Court "shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(a)(2)(B).[2] In *Paroline v. United States*, 572 U.S. 434, 134 S.Ct. 1710 (2014), the Supreme Court acknowledged the difficulty in determining

---

[2] If this Court agrees that a victim seeking restitution has met § 2259's proximate cause requirement, it must then calculate the amount of the losses that "comport[] with the defendant's relative role in the causal process that underlies the victim's general losses." *Paroline,* 572 U.S. at 437.

what amount of the losses suffered by a victim "are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim." *Id*. at 449.  However, the *Paroline* court offered that sentencing courts could consider a number of factors "that bear on the relative causal significance of the defendant's conduct in producing those losses," such as the number of past criminal defendants who have contributed to the victim's losses, a reasonable prediction of number of future defendants likely to be convicted of contributing to these losses, whether the defendant distributed the image, how many images of the victim the defendant possessed and whether he had any connection to their original production.  *Id*. at 460.

Though Tack produced and received several images and videos of child pornography, none of those victims have requested restitution currently.  However, the United States requests to supplement this pleading under 18 U.S.C. § 2259(a) if such requests are received after this filing.

### c. Sentencing recommendation

Since at least 2013, Tack has incessantly committed sexual offenses against children, despite being subject full-time supervision, sexual offender treatment, and registry requirements.  His prior treatment provider noted that Tack has "difficulties accepting he is attracted to underage females" (PSR ¶ 112), a conclusion echoed by

Tack's contemporaneous psychosexual evaluation. PSR ¶ 114. Because of this (and as was true previously), Tack "is not motivated for sex offender programming [because] he does not believe he suffers from sexual problems serious enough to require long-term sex offender treatment." *Id*.

No prior intervention, to include a years-long prison sentence, has effected meaningful change in Tack's life. Sex offender treatment offered Tack no insight into his behavior and provided him with no empathy for the victims he continues to create. Tack tenders no demonstration of his awareness that the children he is using for his own sexual gratification often come from traumatic backgrounds, subject to prior abuses that make them more susceptible to Tack's advances. And when faced with this reality, as when Jane Doe 1 told him that she had been previously raped by her relative, Tack simply ended those conversations, as these children no longer served his purpose.

Based on his past actions, Tack is likely to immediately return to this behavior when he is released from custody in this case. Because of this, Tack cannot currently be safely released into the community, lest he be given the opportunity to harm more children. He will not be deterred and he does not respect the law's attempts to bind him. As such, a guidelines sentence is necessary to protect the public from Tack, to provide him just punishment, and to reflect the seriousness of his offenses.

## CONCLUSION

The United States recommends the Court impose a guidelines sentence in this case, followed by a lifetime term of supervised release, which is warranted by the above factors.

Respectfully submitted this 3rd day of April 2026.

TIMOTHY J. RACICOT
Acting United States Attorney

*/s/ Brian C. Lowney*
BRIAN C. LOWNEY
Assistant U.S. Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, a copy of the foregoing document was served on the following persons by the following means:

(1,2)   CM/ECF
( )     Hand Delivery
( )     U.S. Mail
( )     Overnight Delivery Service
( )     Fax
( )     E-Mail


1.    Clerk, U.S. District Court

2.    Shandor S. Badaruddin
      Attorney for the Defendant


                              */s/ Brian C. Lowney*
                              Assistant U.S. Attorney
                              Attorney for Plaintiff

12